UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19-cv-294-MOC-DCK

| | |
|---|---|
| THERESA ANNE EVANS and STEVEN MICHAEL EVANS, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| FOREST RIVER, INC., | ) **ORDER** ) ) |
| Defendant. | ) ) ) |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendant Forest River Inc. (Doc. No. 9).

## I. BACKGROUND

### A. Procedural Background

Plaintiffs Theresa Evans and Steven Evans bought a 2017 Forest River Dynamax Isata 3 MC recreational vehicle bearing identification number 8BNPF4CCXGE121979 (the "RV"), manufactured by Forest River. On September 16, 2019, Plaintiffs filed this action against Defendant Forest River, a recreational vehicle ("RV") manufacturer, in the General Court of Justice, Superior Court Division in Burke County, North Carolina seeking a judgment against Forest River for $106,912.00, the full purchase price of the RV, plus incidental and consequential damages, treble damages, and attorneys' fees. (Doc. No. 1-1 ("the Complaint")). The total monetary damages sought by Plaintiffs is $317,842.59.

On October 17, 2019, Defendant filed a notice of removal pursuant to 28 U.S.C. §§ 1332 and 1441 as the United States District Court for the Western District of North Carolina has original

jurisdiction founded upon the diversity of citizenship between the parties and the amount in controversy exceeds the statutory minimum of $75,000.00, exclusive of interest and costs. On October 24, 2019, Defendant filed its answer (the "Answer"). (Doc. No. 3).

Plaintiffs' Complaint alleges that Defendant violated the North Carolina New Motor Vehicles Act, N.C. GEN. STAT. § 20-351 et seq. ("the Warranty Act"), by refusing to provide a refund to Plaintiffs for their dysfunctional RV. Furthermore, Plaintiffs allege Defendant's failure to provide a refund is unreasonable and, as such, Defendant must pay both treble damages pursuant to N.C. GEN. STAT. § 20-351.8 and reasonable attorneys' fees for Plaintiffs.

Defendant responds that the Warranty Act does not apply to the RV purchased by Plaintiffs because it weighs over 10,000 pounds. Defendant further contends that because the Warranty Act does not apply, Plaintiffs do not qualify for a refund or treble damages under the statute. Defendant further argues that even if the RV is a motor vehicle subject to the Warranty Act, Plaintiffs did not give Defendant the required written notice under both the Warranty Act and the RV's warranty and have also failed to give Defendant a final opportunity to remedy the alleged defects.

Defendant filed the pending summary judgment motion on September 1, 2020. (Doc. No. 9). Plaintiffs submitted a Memorandum in Response to the Motion for Summary Judgment on October 5, 2020. (Doc. No. 16). Defendant then filed a Supplemental Memorandum on November 2, 2020. (Doc. No. 17). A hearing in this matter was held on November 3, 2020. Thus, this matter is ripe for disposition.

### B. Factual Background

On December 29, 2017, Plaintiff Theresa Evans traveled to Carolina Coach and Camper LLC, located in Claremont, North Carolina and purchased an RV manufactured by Defendant. (Doc. No. 15 ("Theresa Evans Decl.") at ¶ 1). The RV was delivered that same day. (Id.). The RV

was placed in the name of both Theresa Evans and her son Michael Evans. (Id. at ¶ 2). The specified weight of the RV according to the vehicle sticker placed inside the driver's side door is 9852 pounds (Doc. No. 15, Ex. 1); the specified weight of the RV according to the Federal Certification Label is 9852 pounds (Doc. No. 10, Ex. 3); and the specified weight of the RV according to the Certificate of Origin is also less than 10,000 pounds (Doc. No. 10, Ex. 4).

Defendant gave Plaintiffs certain warranties concerning the RV, including those incorporated within the Warranty Act. (Compl. at ¶ 4). Ms. Evans first noticed substantial water leak problems with the RV in February 2018. (Theresa Evans Decl. at ¶ 4). She took the RV back to Carolina Coach and Camper, LLC to address the water problem on February 12, 2018. The water leaks were at the entry door, the cabinets above the door, the wall by the sink, the back bedroom, and on the floor and ledge next to the bed in the back bedroom. (Id.). Additionally, the tv antenna coax was "very poorly sealed on roof." (Id.). Carolina Coach and Camper, LLC attempted repair on the seal and tried to dry everything off by removing and replacing ceiling panels and running an ionizer and dehumidifier for several days. (Id.). The RV was returned to Plaintiffs on March 5, 2018.

Ms. Evans contacted Defendant upon the discovery of the water leak in February of 2018 and notified them in written emails about the water leak problems. (Id. at ¶ 5). She also noted her concern about ongoing leaks and potential mold issues. (Id.). She even sent a mold report in writing to Defendant with evidence of continued water damage to the RV. (Doc. No. 11-1, Plaintiffs Discovery Responses at 34-43). Ms. Evans requested that they take the RV back and trade it in for another one or that the contract be rescinded altogether. (Theresa Evans Decl. at ¶ 5; Doc. No. 10, Ex. 2 at 1). Defendant responded that they deserved an opportunity to repair the water leak at their facility. (Theresa Evans Decl. at ¶ 5).

The parties decided to have Defendant attempt a repair after Ms. Evans returned from a planned two-month trip with the RV to visit family from April to early June. (Id. at ¶ 6). While on her trip in May of 2018, Ms. Evans experienced another substantial problem with water leaks from a substantial rain event. (Id. at ¶ 8). The rear slide-out also malfunctioned on this trip with the cause undetermined. (Id. at ¶ 7). Defendant retrieved the RV and took it back to their facility to attempt a final repair between the approximate dates of June 20, 2019 and July 20, 2018. (Id. at ¶ 10).

In August of 2018, Ms. Evans took the RV for a trip to Ohio. (Id. at ¶ 11). She returned after one day because her refrigerator stopped working and she could not keep food. (Id.). She took the RV to Tom Johnson's Camping Center to repair the refrigerator and there discovered that a water leak from rain had damaged the refrigerator so that it had become inoperable due to water damage. (Id.). Ms. Evans had the refrigerator repaired.

In September of 2018, Ms. Evans took the RV to Niagara Falls, New York. (Id. at ¶ 12). Midway through the journey while packing to travel to Pennsylvania, the rear slide-out would not return. (Id.). It had also been damaged due to water leak problems. (Id.). Ms. Evans had to hire someone to break the gear rods to get the slide-out to return just so she could drive the RV back home. (Id.).

On September 22, 2018, Plaintiffs took the RV back to Tom Johnson's Camping Center for repair of the failed slide-out and resolution of the water leak problem. (Id. at ¶ 13). Plaintiffs waited for several months until mid-December for "warranty approval" from Defendant to repair the RV. (Id.). Plaintiff Ms. Evans continued to write to Defendant by email requesting that they fix the extensive water leak problems. (Id.; Doc. No. 11-1, Plaintiffs Discovery Reponses, at 46-50). Finally, after never receiving such approval and after Defendant would not attempt further

repair, Plaintiffs decided to rescind the contract pursuant to their rights under the Warranty Act.

For purposes of the Warranty Act, in the above-described transaction and events: (1) Plaintiffs were and are "Consumers"; and (2) Defendant was and is the "Manufacturer" of the RV. See N.C. GEN. STAT. § 20-351.1. The parties dispute whether the RV was and is a "Motor Vehicle" and a "New motor vehicle," that weighs less than 10,000 pounds, as those terms are defined in N.C. GEN. STAT. § 20-351.1.

Despite numerous attempts at repairs by Defendant and its authorized dealer, the RV could not be used by Plaintiffs for more than 157 days of the first 12-month warranty period due to substantial water leak problems. (Compl. at ¶ 8). Plaintiffs were only able to use the RV for a total of approximately 8000 miles during the initial warranty period, over 700 miles of which were driven while the RV was inoperable as a sleeping and eating camper due to a failed "slide out" likely caused by the continuous water leak problems. (Id.).

These facts, construed in the light most favorable to Plaintiffs, demonstrate that water leak problems substantially impaired the value of the RV to Plaintiffs and these problems occurred within the first 12 months following delivery of the RV to them. (Id. at ¶ 9). The facts further show that Defendant failed, despite a reasonable number of attempts, to conform the RV to the applicable warranties. (Id.). Importantly, the facts as alleged also show that Defendant was given a substantial opportunity to repair the water leak problems at their facility in Indiana. To this day, Defendant has refused to provide a refund to Plaintiffs.

This case presents the Court with several issues: (1) whether the RV is a motor vehicle weighing less than 10,000 pounds under the Warranty Act, (2) whether Plaintiffs met certain conditions precedent under the RV warranty and the Warranty Act, (3) whether treble damages are appropriate against Defendant, (4) whether consequential and incidental damages are appropriate

5

against Defendant, and (5) whether attorneys' fees may properly be obtained from Defendant. This Court holds that the RV is a vehicle weighing less than 10,000 pounds under the Warranty Act, that Plaintiffs have met certain conditions precedent under the warranty and Warranty Act, that treble damages may be pursued against Defendant, and that consequential and incidental damages plus attorneys' fees may also be obtained from Defendant. However, because there are still several issues of material fact regarding damage to the RV, repair attempts by Defendant, and correspondence between the parties, the Court does not decide whether Defendant is in fact liable for the actions alleged in the Complaint. The Court simply holds that this case may move forward with Plaintiffs pursuing their full requested remedies against Defendant.

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. (Id. at 324). Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine

issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of her claim.

### B. The North Carolina New Vehicle Warranty Act

North Carolina passed the Warranty Act to provide "State and private remedies against motor vehicle manufacturers for persons injured by new motor vehicles failing to conform to express warranties." N.C. GEN. STAT. § 20-351. Under the statute, the remedy of repurchase of the vehicle or refund of the purchase price is provided where:

> [T]he manufacturer is unable, after a reasonable number of attempts, to conform the motor vehicle to any express warranty by repairing or correcting, or arranging for the repair or correction of, any defect or condition or series of defects or conditions which substantially impair the value of the motor vehicle to the

consumer....

N.C. GEN. STAT. § 20-351.3(a). The statute creates a presumption that a "reasonable number of attempts have been undertaken" if "the vehicle was out of service to the consumer or while awaiting repair of the nonconformity or series of nonconformities for a cumulative total of 20 or more business days during any 12-month period." N.C. GEN STAT. § 20-351.5(a)(2). The presumption has been referred to as an "initial eligibility hurdle[]." Anders v. Hyundai Motor Am. Corp., 104 N.C. App. 61, 65 (1991). For the presumption to apply, the consumer must have notified the manufacturer directly in writing of the defect and allowed the manufacturer a reasonable period, not to exceed fifteen calendar days, in which to make the repairs. N.C. GEN. STAT. § 20-351.5(a); see also Hardison v. Kia Motors Am., Inc., 226 N.C. App. 22, 25 (2013). The manufacturer must clearly and conspicuously disclose to the consumer in the warranty or owner's manual that written notification of a nonconformity is required before a consumer may be eligible for a refund or replacement of the vehicle and the manufacturer shall include in the warranty or owner's manual the name and address where the written notification may be sent. N.C. GEN. STAT. § 20-351.5(a).

To establish a sufficient claim of breach of warranty under the Warranty Act, Plaintiffs must bring forth sufficient evidence that they purchased a "new motor vehicle" as defined within the statute, that has a "defect of condition or series of defects or conditions which substantially impair the value of the motor vehicle to the consumer, and which occurred no later than 24 months or 24,000 miles following original delivery of the vehicle." N.C. GEN. STAT. § 20-351.3(a). Plaintiffs must also prove that the manufacturer was "unable, after a reasonable number of attempts, to conform the motor vehicle to any express warranty by repairing or correcting or arranging for the repair or correction" of the motor vehicle. (Id.). Of particular relevance in this

8
Case 1:19-cv-00294-MOC-WCM   Document 18   Filed 12/10/20   Page 8 of 20

case, the statute does not apply to "any motor vehicle that weighs more than 10,000 pounds." N.C. GEN. STAT. § 20-351.1(3).

### III. DISCUSSION

#### A. Vehicle Weight

The question of whether Plaintiffs' RV weighs more or less than 10,000 pounds is outcome determinative. If the RV is found to weigh more than 10,000 pounds, then the Warranty Act does not apply to the instant action. As noted above, the Warranty Act applies to "motor vehicles." The term "motor vehicle" is defined in N.C. GEN. STAT. § 20-351.1(3) as follows: "'Motor vehicle' includes a motor vehicle as defined in G.S. 20-4.01 that is sold or leased in this State, but does not include 'house trailer' as defined in G.S. 20-4.01 *or any motor vehicle that weighs more than 10,000 pounds*." (emphasis added). The exact meaning of this vehicle weight statutory provision is ambiguous. There are a variety of ways to calculate the weight of a motor vehicle including but not limited to dry weight, gross vehicle weight ("GVW"), and gross vehicle weight rating ("GVWR"). The Warranty Act does not specify which method of weight measurement is to be used.

When there is ambiguity in the language of a statute, the ambiguity must be resolved using the rules of statutory construction, and the "primary rule of construction [is] that the intent of the Legislature controls." In re Hardy, 294 N.C. 90, 95 (1978). "The primary goal of statutory construction is to effectuate the purpose of the legislature in enacting the statute." Liberty Mut. Ins. Co. v. Pennington, 356 N.C. 571, 574 (2002). "The legislative purpose of a statute is first ascertained by examining the statute's plain language." Correll v. Div. of Soc. Servs., 332 N.C. 141, 144 (1992). "'Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give [the statute] its plain and definite meaning, and are

9

Case 1:19-cv-00294-MOC-WCM   Document 18   Filed 12/10/20   Page 9 of 20

without power to interpolate, or superimpose, provisions and limitations not contained therein.'" State v. Camp, 286 N.C. 148, 152 (1974) (citations omitted).

Within Chapter 20, motor vehicle weight is typically referred to as GVW,[1] which is further defined as the "total weight of a combination (articulated) motor vehicle, including passengers, fuel, cargo, and attachments." N.C. GEN. STAT. § 20-4.01(12c). In fact, prior to being rewritten in 2005, N.C. GEN. STAT. § 20-351.1(3) used to reference GVW. The prior version of the statute read: "'Motor vehicle' includes a motor vehicle as defined in N.C. GEN. STAT. § 20-4.01 which is sold or leased in this State, but does not include 'house trailer' as defined in N.C. GEN. STAT. § 20-4.01 or any motor vehicle with a *gross vehicle weight* of 10,000 pounds or more."[2] (emphasis added). The legislature's omission of the "gross vehicle weight" reference, a weight metric explicitly defined within the Warranty Act, suggests that the legislature may have intended to utilize a different weight metric for this section of the statute.

Defendant argues for the use of GVWR. The RV has a GVWR of 11,030 pounds. To support its argument, Defendant notes that GVWR is an industry standard specified by the manufacturer of a vehicle as the maximum loaded weight a vehicle is capable of hauling. (Daniel Evans Decl. at ¶ 5). Therefore, using GVWR in this section would eliminate individual disparities

---

[1] "Gross vehicle weight" is utilized as the weight metric in: N.C. GEN. STAT. §§ 20-4.01(5a), 20-4.01(12a), 20-4.01(28a), 20- 51(10), 20-51(12), 20-86, 20-88(k), 20-88(m), 20-116(g)(2), 20-116(g)(3), 20-116(h), 20-118, 20-118.3, 20-118.4, 20-123(c), 20-124(f), 20-125.1(c)(2), 20-129.1(4), 20-129.1(5), 20-129.1(6), 20-129.1(10), 20-175.5, 20-183.2, 20-305, and 20-305.1.

[2] The phrase "gross vehicle weight" was omitted from N.C. GEN. STAT. § 20-351.1(3) by S.L. 2005-436, H.B. No. 1295 "Motor Vehicles – New Motor Vehicle Warranty Act: An Act to Clarify the Maximum Weight of a Motor Vehicle that is Subject to the New Motor Vehicle Warranties Act and to Promote the Expeditious Settlement of Claims when the Consumer Requests the Manufacturer to Repurchase the Motor Vehicle" (2005). Ironically, this "clarification" effort is precisely what resulted in the ambiguity currently at issue.

10
Case 1:19-cv-00294-MOC-WCM   Document 18   Filed 12/10/20   Page 10 of 20

between otherwise identical vehicles. (Doc. No. 12 at 9-10). To support this argument, Defendant relies almost entirely on Erwin v. Tweed, a North Carolina Court of Appeals decision dealing with the North Carolina Underinsured Motorist statute. 159 N.C. App. 579 (2004).

In Erwin, the court interpreted the meaning of the phrase "gross vehicle weight as specified by the manufacturer" as used in N.C. GEN. STAT. § 58-40-10(1)(b)(1). The defendant contended that the ambiguous phrase "gross vehicle weight as specified by the manufacturer" should be read to mean the GVWR appearing on the identification plate on the vehicle, whereas the plaintiff contended that the phrase should be read as the actual weight of a particular vehicle "weighed at a weigh station." 159 N.C. App. at 580-81. The court rejected both parties' interpretations and found that a material issue of fact existed as to the "gross vehicle weight as specified by the manufacturer." In rejecting both arguments, the court expressly rejected the plaintiff's interpretation, finding that the actual weight of the subject vehicle "produces minor inherent weight inconsistencies between identically designed vehicles," thereby failing "to provide one, set standard to be used for that particular vehicle model and is not preferred." 159 N.C. App. at 586.

Because the court in Erwin emphasized the importance of having consistent weight measurement for the same vehicle without fluctuations that would result from weighing individual vehicles (due to gas in the tank or added parts), Defendant contends that GVWR should be used because it would eliminate inconsistences in weight between identically designed vehicles for the purposes of applying the Warranty Act. (Doc. No. 12 at 11).

Defendant's argument fails for three reasons: (1) it fails to consider the overall purpose and structure of the Warranty Act (2) it ignores critical aspects of the decision in Erwin that weigh against applying GVWR to the Warranty Act, and (3) using GVWR would lead to absurd results.

The primary purpose of the Warranty Act is not to make it harder for people to obtain

remedies against manufacturers who sell them flawed vehicles; rather, the primary purpose of the statute is to make it easier for individuals to seek remedies against those who sell lemons to consumers. Moreover, the structure of the Warranty Act evinces a legislative intent to protect consumers who purchase motor vehicles manufactured for everyday travel, leisure, or recreational activities. The Warranty Act explicitly disclaims application to trailer homes and, by pointing to the definition of motor vehicle in N.C. GEN. STAT. 20-4.01, it impliedly suggests a more lenient weight-measurement standard than that applied to other vehicles such as commercial vehicles. In the definitions statute, "commercial motor vehicles" are classified into different categories using GVWR, but not the section involving simply a "motor vehicle." See N.C. GEN. STAT. 20-4.01(3d). It simply does not make sense to determine the weight of a motor vehicle by the maximum weight it can bear—something that makes a great deal more sense when applied to commercial vehicles in the business of hauling various materials.

Furthermore, the Erwin decision works against Defendant's position. In Erwin, the court specifically rejected the idea that GVWR should be used as the standard for determining whether a "motor vehicle" weighs more than 10,000 pounds. The court was tasked with interpreting another provision of the North Carolina General Statutes defining a truck for insurance purposes as a "private passenger vehicle" where it "has a gross vehicle weight as specified by the manufacturer of less than 10,000 pounds."

In Erwin, the defendant argued that the court must look to the GVWR of the motor vehicle to determine its weight for the purpose of this statutory provision. As in this case, the defendant argued that the truck in that matter had a GVWR in excess of 10,000 pounds even though the actual weight of the unloaded motor vehicle may be less than 10,000 pounds. See Erwin, 159 N.C. App. at 580-81. Defendant makes the same argument in this action. The Erwin court specifically rejected

this argument, holding:

> we construe "gross vehicle weight as specified by the manufacturer" to require evidence of the manufacturer's specified weight of the vehicle alone. This weight does not include passenger weight or the weight of any load the vehicle is carrying or capable of carrying at any given time. Only the weight of the vehicle itself is relevant to the determination of the manufacturer's "gross vehicle weight."

(Id. at 584). The court went on to point out that if the legislature wanted to use GVWR so that vehicle weight would be determined by the maximum loaded weight it could safely bear, then the legislature likely would have utilized that more stringent requirement. (See id.). The same analysis applies in this case. The legislature did not use the term GVWR or GWR in the Warranty Act provision in question, but it did narrow the question to "any motor vehicle that weighs more than 10,000 pounds." Such language most clearly indicates the weight of the vehicle itself, and not how much weight the vehicle can bear.

Here, Defendant's argument that using GVWR protects against the Erwin court's concern for "minor inherent weight inconsistencies between identically designed vehicles" is also misguided. The Erwin court was explaining the importance of the term "as specified by the manufacturer" in that context. The plaintiff in that case argued that the weight determination for any case required weighing the specific motor vehicle in question, which they had done and introduced evidence of. (Id. at 586). The court rejected this argument because it "merely gives the actual weight of the truck without reference to manufacturer's specifications," thereby creating "minor inherent weight inconsistencies between identically designed vehicles." (Id.). Instead of using GVWR or individual vehicle weighing, the court determined that the weight of a vehicle "may be obtained by examining dealership literature provided by the manufacturer giving the actual weight of model vehicles adjusted to reflect additional options on the vehicle in question." (Id. at 584). The court also stated that "a statement of the weight of the vehicle contained in the

vehicle owner's manual could be used to show its 'gross vehicle weight.'" (Id.).

Here, the Court has been provided with "manufacturer specifications" regarding the RV's weight. Defendant has specified that the RV's specified weight (not GVWR) is 9852 pounds. The Court has also received exhibits demonstrating that the vehicle weighs less than 10,000 pounds.

Finally, in Erwin, the court also held that it would not make sense to apply GVWR to determine if a vehicle qualified as a personal passenger vehicle because "most vans and pickup trucks would exceed 10,000 pounds" if GVWR were used. (Id. at 586). To apply GVWR to motor vehicles would lead to absurd results. Commonly owned motor vehicles like the Ford F-250 and Ford F-350 pickup trucks have GVWRs of 10,000 pounds or greater,[3] which would disqualify them from the protections of the Warranty Act. Surely the North Carolina legislature did not intend that only consumers who own small cars or small pickup trucks can recover under the Warranty Act.

In short, this Court holds that GVWR is not the appropriate weight measurement for determining the weight of a motor vehicle in the Warranty Act. Instead, the weight of the vehicle should be determined by examining dealership literature and manufacturer specifications about the weight of the actual vehicle. Here, dealership literature and manufacturer specifications demonstrate that Plaintiffs' RV is less than 10,000 pounds; therefore, Plaintiffs may bring their claim under the Warranty Act.

### B. Conditions Precedent to Trigger Application of the Warranty Act

As indicated above, a claim under the Warranty Act requires proof of a purchase of a "new motor vehicle," as defined within the statute, that has a "defect of condition or series of defects or

---

[3] See 2020 Ford F-Series Super Duty Technical Specifications, 6, https://media.ford.com/content/dam/fordmedia/North%20America/US/product/2020/f-series-super-duty/2020-Super-Duty-Tech-Specs.pdf

conditions which substantially impairs the value of the motor vehicle to the consumer, and which occurred no later than 24 months or 24,000 miles following original delivery." Plaintiffs must also prove that the manufacturer was "unable, after a reasonable number of attempts, to conform the motor vehicle to any express warranty by repairing or correcting, or arranging for the repair or correction" of the motor vehicle. N.C. GEN. STAT. § 20-351.3(a).

The Warranty Act also provides a means to prove presumptively the element that "a reasonable number of attempts have been undertaken to conform the motor vehicle to the applicable warranties." Under this presumption provision, either (1) proof of four or more unsuccessful attempts to repair or (2) proof that the vehicle was "out of service to the consumer during or while awaiting repair of the nonconformity or series of nonconformities for a cumulative total of 20 or more business days during any 12-month period of the warranty," invokes the presumption. N.C. GEN. STAT. § 20-351.5(a). As a condition precedent to invoke the presumption, however, the consumer must prove that they "notified the manufacturer directly in writing of the existence of the nonconformity or series of nonconformities and allowed the manufacturer a reasonable period, not to exceed 15 calendar days, in which to correct the nonconformity or series of nonconformities."

Defendant contends not only that Plaintiffs cannot trigger the Warranty Act's presumption provisions but also that Plaintiffs cannot bring a claim under the Warranty Act. Defendant advances this assertion with two arguments: that Plaintiffs (1) failed to fully comply with the terms of the RV warranty by not providing written notice to Defendant at the specific address listed in the warranty and (2) failed to provide Defendant with a final opportunity to correct the nonconformities.

Defendant's arguments fail at the summary judgment phase for three reasons: (1) Plaintiffs

15
Case 1:19-cv-00294-MOC-WCM   Document 18   Filed 12/10/20   Page 15 of 20

have put forward a sufficient forecast of evidence to invoke the Warranty Act's presumption of liability provisions, (2) the presumptive liability established under this portion of the Warranty Act is not the exclusive remedy of the Act, and (3) individual warranties cannot contract away specific statutory protections. In other words, even if the Court held that Plaintiffs have not put forward sufficient evidence to establish presumptive liability under N.C. GEN. STAT. § 20-351.5, Plaintiffs may still proceed with their claim for damages pursuant to N.C. GEN. STAT. § 20-351.3, which establishes the general elements of the claim under the Warranty Act. See N.C. GEN. STAT. § 20-351.5(b).

Less than two months after the date of purchase of the RV, Plaintiff Theresa Anne Evans contacted Defendant by written email about her strong concerns about water leak problems with the RV. Ms. Evans even hired a mold and water damage expert to inspect the RV and provided that written report to Defendant. The RV stayed for repair at the dealer's shop for over 20 days for that initial repair. Ms. Evans requested that Defendant take back the RV due to the water leak problems. The parties agreed that they would try further repair at the manufacturer's facility. In June and July 2018, Defendant had the RV at their facility to attempt repair of the water leak problems for more than the 15 days contemplated within the presumption provisions of the Warranty Act.

After Defendant attempted repair for over fifteen days, the RV failed again. On a trip to Niagara Falls, Ms. Evans had to hire someone to break the rods of the rear slide-out just so she could drive home. The RV then sat at a dealer's repair shop from September 22, 2018 to mid-December 2018. According to the facts when read in favor of the non-movant, Plaintiffs attempted to contact Defendant multiple times during this period to secure a commitment from Defendant that Defendant would cover the repairs that continued to stem from the water leak problems the

RV had previously suffered. Ms. Evans sent numerous written emails to Defendant requesting repair during this long time period. Instead of responding to Plaintiffs or authorizing repairs, it appears that Defendant refused to authorize repair.

Defendant contends that the writing to the manufacturer required under N.C. GEN. STAT. § 20-351.l(a) must be made to the address provided by the manufacturer. Defendant contends that since Plaintiffs' written notice to them of the nonconformities was by emails and not to the address they specifically put within their written documents, Plaintiffs' claim must entirely fail. This argument failed in Hardison where a written letter concerning the defects with the motor vehicle were sent to a different address than the one specified by the manufacturer within its express warranty. See 226 N.C. App. at 27-28. The North Carolina Court of Appeals held that the fact that the manufacturer actually received the notice proved that "there is no genuine issue of fact as to the sufficiency of plaintiff's notice of the nonconformity under N.C.G.S. § 20-351.5." Id. at 27. Defendant here also received clear notice of Plaintiffs' concerns and the problems plaguing the RV.

Defendant further contends that it was not provided the right to attempt a final repair as to the rear slide-out. Defendant frames the problems with the RV as a series of separate nonconformities and not necessarily related water-leak issues. However, in construing the facts in the light most favorable to the non-movant, this Court notes that the RV did not suffer from several separate problems; rather, the RV suffered several symptoms of the same nonconformity—a severe water leak problem. Furthermore, the facts make clear that Defendant was given several opportunities to repair the RV to conform it to applicable warranties and failed to do so.

Not only was Defendant given over a month to repair the RV at its own facility, but Defendant also refused to attempt any further repairs for over three months from September to

17
Case 1:19-cv-00294-MOC-WCM   Document 18   Filed 12/10/20   Page 17 of 20

December of 2018. Defendant did not request another attempt to repair until it received a letter from Plaintiffs' counsel demanding they provide Plaintiffs the remedies provided by the Warranty Act. In other words, it appears that Defendant invoked its right to final repair only as a defense to its refusal over a period of three months to authorize a final repair. Plaintiffs reached out to Defendant multiple times from September to December of 2018 to attempt to give Defendant an opportunity to make a final repair, but Defendant never took any action to begin or authorize a repair. Therefore, this Court holds that Plaintiffs both gave Defendant notice and an opportunity for a final repair. As such, Plaintiffs may move forward with their claim of presumptive liability under N.C. GEN. STAT. § 20-351.5. For the same reasons that Plaintiffs may move forward with this claim, they may also move forward with their more general claim under the Warranty Act under N.C. GEN. STAT. § 20-351.3.

### C. Availability of Treble Damages

For the same reasons as discussed above, Plaintiffs may move forward with their claim for treble damages. For treble damages to be awarded pursuant to the Warranty Act, it must be found that the manufacturer "unreasonably refused to comply with G.S. 20-351.2 or G.S. 20-351.3." N.C. GEN. STAT. § 20-351.8(2). The North Carolina Supreme Court has held that a manufacturer does not act unreasonably when it "cooperate[s] with plaintiffs and address[es] their concerns in a prompt and honest manner as soon as it was notified of their dissatisfaction." Buford v. Gen. Motors Corp., 339 N.C. 396, 404 (1994).

Here, Defendant claims that it promptly and adequately responded to all of Plaintiffs' concerns when those issues were brought to Defendant's attention. (Doc. No. 12 at 15). In making this argument, Defendant points to various repair attempts and communications with Plaintiffs. Plaintiffs contend that Defendant has not been prompt in its responses and has never adequately

18
Case 1:19-cv-00294-MOC-WCM   Document 18   Filed 12/10/20   Page 18 of 20

responded to their concerns. (Doc. No. 16 at 14-15). In making this argument they point to Defendant's inability to repair the RV, delay in approving repairs for the RV, and inattention to communications sent to Defendant by Plaintiffs. (Id.).

Construing the facts in the light most favorable to the non-movant, it appears that Defendant failed on several occasions to deal with Plaintiffs' concerns in a prompt and honest manner, as evidenced by the numerous delays in responding to Plaintiffs and in Defendant's failure to repair the RV. Therefore, this Court holds that Plaintiffs may proceed with their claim against Defendant for treble damages.

### D. Availability of Consequential and Incidental Damages

Defendant wrongly contends that Plaintiffs may not pursue consequential and incidental damages because the express warranty of the RV disclaimed such damages. The Warranty Act expressly provides that manufacturers who are found liable under the statute must pay "[a]ny incidental damages and monetary consequential damages." N.C. GEN. STAT. § 20-351.3(a)(4).

The warranties guaranteed by the Warranty Act are in addition to the express warranties provided by contract between manufacturers and consumers. Defendant cannot use a warranty contract to override statutory protections. If this were so, all manufacturers would simply disclaim all of the damages protections provided to the consumer by the Warranty Act. This would render the statute meaningless.

Moreover, the RV warranty acknowledges that its waiver of consequential and incidental damages will not apply in states where such a waiver is not permissible. (Doc. No. 10, Ex. 1). Because the Warranty Act explicitly provides all consumers purchasing a motor vehicle with the protection of consequential and incidental damages, waiver of those damages in situations covered by the Warranty Act is not permissible in North Carolina. As such, the RV warranty's disclaimer

19
Case 1:19-cv-00294-MOC-WCM   Document 18   Filed 12/10/20   Page 19 of 20

of consequential and incidental damages cannot apply to Plaintiffs' purchase.

In short, the Court holds that Plaintiffs may proceed with their claim for consequential and incidental damages against Defendant.

### E. Attorneys' Fees

The Warranty Act makes clear that the prevailing party may obtain attorneys' fees from the losing party if (a) "[t]he manufacturer unreasonably failed or refused to fully resolve the matter which constitutes the basis of such action; or (b) [t]he party instituting the action knew, or should have known, the action was frivolous and malicious. N.C. GEN. STAT. § 20-351.8. In Hardison, the court found that the award of attorneys' fees was improper per N.C. GEN. STAT. § 20-351.8(3)(a) where the manufacturer addressed the consumer's concerns in a "prompt and honest manner." 226 N.C. App. at 28 (internal citations omitted). For the same reasons that Plaintiffs may move forward with their claims for treble damages and consequential and incidental damages, Plaintiffs may move forward with their claim for attorneys' fees against Defendant. Construing the facts in the light most favorable to the non-movant, the events of this case indicate that Defendant has not been prompt or honest in its attempts to repair the RV or its communications with Plaintiffs.

### IV. CONCLUSION

To be clear, the Court does not resolve this case in favor of either party. The Court simply holds that Plaintiffs may proceed on all claims against Defendant. For the reasons stated herein, Defendant's Motion for Summary Judgment is DENIED.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment, (Doc. No. 9), is **DENIED**.

Signed: December 10, 2020

Max O. Cogburn Jr.
United States District Judge